WO

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Steven W. Bluth, | ) | No. CV-04-2684-PHX-SRB |
| | ) | |
| Plaintiff, | ) | **OPINION AND ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| Jack L. Johnson; International Health | ) | |
| Management Associates, Inc.; and | ) | |
| Illinois Corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court is Defendants' Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a) from the District of Arizona to the Northern District of Illinois (Doc. 17). The Court now rules on the motion.

**I.    BACKGROUND**

In January 1994, the Board of Directors of Defendant International Health Management Associates, Inc. ("IHMA") wrote and executed a contract at its Illinois office issuing Plaintiff Steven W. Bluth ("Bluth") rights to purchase 200 shares of IHMA stock at

$1.00 per share or 20% ownership of IHMA.  In June 1995, Plaintiff tendered a check for $200.00 to Defendant Jack J. Johnson ("Johnson"), payable to IHMA, for the purchase of 200 shares of IHMA stock.  While Defendants held Plaintiff out as a 20% owner in name, IHMA never issued Plaintiff the 200 shares of IHMA stock.

From 1993 until 1995, Plaintiff executed his duties as Treasurer and as a director of IHMA in Illinois.  From 1997 until January 2004 he was a full-time employee.  However, between 1996 and 2001, Plaintiff spent about half of his time in Illinois and the other half of the time in Arizona.  In 2001, Plaintiff began working primarily out of his residence in Arizona.[1]  While executing his employment duties in both states Plaintiff began working primarily out of his house in Arizona to save IHMA the expenses of maintaining an apartment in Illinois and weekly travel between states.  One project Plaintiff worked on while he was in Illinois and Arizona involved a license for use of drug delivery technology to Cubist Pharmaceutical, Inc. ("Cubist").  The Cubist project yielded substantial profits for IHMA.  After disagreements between Plaintiff and Johnson over Plaintiff's compensation on various projects, Plaintiff filed a complaint on November 29, 2004, in this Court alleging breach of contract, breach of duty of good faith and fair dealing, constructive trust, unjust enrichment, fraud/misrepresentation, oppression/breach of fiduciary duty, and refusal to provide equitable accounting of IHMA profits or allow Plaintiff to inspect the records of

---

[1] A factual dispute exists with regard to the reason for Plaintiff's change in work location to Arizona.  While Johnson alleges that Plaintiff requested to work in Arizona, Plaintiff has produced evidence that this move was not voluntary on his part.

1   IHMA.   On June 22, 2005, Defendants filed a motion to transfer venue from the District of

2   Arizona to the Northern District of Illinois.

3

4   **II.   LEGAL STANDARDS AND ANALYSIS**

5           Pursuant to  28 U.S.C. §1404(a), "[f]or the convenience of parties and witnesses, in

6   the interest of justice, a district court may transfer any civil action to any other district or

7   division where it might have been brought."  Defendants have the burden of establishing this

8

9   action should be transferred to the Northern District of Illinois.  Moreover, Defendants must

10  establish: (1) that the transferee district, the Northern District of Illinois, is one where the

11  case might have been brought; and (2) that the convenience of parties and witnesses and the

12

13  interest of justice favor transfer.  *Hatch v. Reliance Inc. Co.*, 758 F.2d 409, 414 (9th Cir.

14  1985).  There are multiple factors the Court may consider to determine whether the second

15  prong of §1404(a) has been satisfied:

16          (1) The location where the relevant agreements were negotiated and executed,
17          (2) the state that is most familiar with the governing law, (3) the plaintiff's
            choice of forum, (4) the respective parties' contacts with the forum, (5) the
18          contacts relating to the plaintiff's cause of action in the chosen forum, (6) the
            differences in the costs of litigating in the two forums, (7) the availability of
19          compulsory process to compel attendance of unwilling non-party witnesses,
            and (8) the ease of access to sources of proof.[2]
20

21

22

23

24

25

26  _____

27      [2] The Court will discuss factors four and five in the same section, as their analysis is
    very similar.  The Court will do the same with factors six and eight.

28                                              - 3 -

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  Furthermore, "recent public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing."  *Id*. at 499.

### A.      Appropriate Venue

There is no dispute that this action could have initially been brought in the Northern District of Illinois.  Accordingly, the Court will proceed to the discussion of the second prong.

### B.      Convenience of Parties, Witnesses, and Interest of Justice

#### 1.      The Location Where Relevant Agreements Were Negotiated and Executed

The first factor looks to the location where relevant agreements were negotiated and executed.  *Warfield v. Gardner*, 346 F. Supp. 2d 1034, 1044 (D. Ariz. 2004).  Here, the contract in question was negotiated and signed by Defendants and Plaintiff in Illinois.  Therefore, this factor favors transfer to Illinois.

#### 2.      Governing Law

The second factor turns on which court is most familiar with the governing state law.  While this action was filed in Arizona, that fact alone is not dispositive on the issue of which state's governing law applies.  Where, as here, the events giving rise to the complaint occurred in more than one state, courts must apply choice of law principles to determine which state's governing law to apply.  In Arizona, courts look to the principles set forth in the Restatement (Second) of Conflict of Laws to resolve choice of law questions. *Bates v.*

1    *Superior Court*, 749 P.2d 1367, 1369 (Ariz. 1988) (citations omitted); *Swanson v. Image*

2    *Bank, Inc.,* 77 P.3d 439, 441 (Ariz. 2003).  At this juncture, the Court need not determine

3

4    how the choice of law analysis plays out, as even assuming that this action is governed by

5    Illinois law (a fact that would weigh in favor of transferring venue), that fact will not affect

6    the Court's ultimate determination on the issue of whether to transfer venue.

7                            **3.      Plaintiff's Choice of Forum**

8

9        A plaintiff's choice of forum is given substantial deference.  *Holder Co. v. The Main*

10   *St. Distrib., Inc.*, 1987 U.S. Dist. LEXIS 10345, at *23 (D. Ariz. Jan. 16, 1987).  "This is

11   especially true where the forum plaintiff chose is not only his domicile but also has a

12
     significant connection with the subject matter of the case." *Id.* (*citing Pacific Car & Foundry*
13
     *Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968)).
14

15       For example, in *Holder Co.*, the court denied the defendant's motion to change venue

16   because the plaintiff "reside[d] in the District of Arizona and the District ha[d] a significant

17
     connection with the subject matter of the case."  1987 LEXIS 10345, at *23.
18

19       Like the plaintiff in *Holder Co*., Plaintiff has demonstrated that the District of Arizona

20   has a "significant connection with the subject matter of the case." 1987 LEXIS 10345, at *23.

21   Plaintiff worked for and helped to develop IHMA's business in Arizona.  Also, while living

22
     in Arizona, Plaintiff was involved in the development of the Cubist project that yielded
23

24   substantial profits for IHMA.  While the Northern District of Illinois "may be an alternative

25   forum, Plaintiff elected to sue the Defendants in Arizona." *Warfield*, 346 F. Supp. 2d at

26   1044.  The Court finds that because Plaintiff chose to sue in Arizona and the state has a

27

28                                          - 5 -

significant connection with the subject matter of the case, this factor weights against the transfer of venue.

**4.      Respective Parties' Contacts with Forum; Contacts Relating Plaintiff's Cause of Action in Arizona**

These factors examine the extent of the parties' contact with either forum. *GNC Franchising, Inc.*, 211 F.3d at 499.  While Defendants' primary place of business is in the State of Illinois, Defendants' connections to Arizona are significant.  Defendants maintained an office and transacted extensive business in Arizona.  While Plaintiff has very strong ties to Arizona, Plaintiff has minimal ties to Illinois.  Plaintiff is a resident of Arizona and transacted business in this state.  Thus, because Defendants have significant ties to both forums and Plaintiff only has strong ties to Arizona, this factor favors Arizona as the proper forum.

**5.      Differences in the Cost of Litigating in the Two Forums; Ease of Access to Sources of Proof.**

A "court will not transfer venue where the transfer will merely shift inconvenience from one party to the other."  *Holder Co.*, 1987 LEXIS 10345, at *23.  In making the determination of which forum is the most convenient, the Court takes into account several considerations including the convenience to the witnesses, difficulty or ease of transferring evidence, and the cost of litigation.[3]

---

[3] *See also Pacific Car*, 403 F.2d at 953 (noting the transfer of records and documents may play a role in this analysis); *Fireman's Fund Ins. Co v. Nat'l Bank for Coops.*, 1993 WL 341274, *4 (N.D. Cal. 1993) (holding that "[t]he movant must make more than mere

Here, Defendants have not shown that the cost of litigation would be less if the venue were transferred to the Northern District of Illinois.  Rather, it appears as if the inconvenience and cost of litigation, travel, and shipping of documents would merely be shifted from one party to another.  *See Pacific Car*, 403 F.2d at 953 (affirming transfer of venue where a ruling otherwise would have required the shipment of up to one thousand file drawers of records).  In addition, Johnson has already obtained counsel in Arizona, thus helping to mitigate the adverse effects of litigating in this forum.

The convenience of witnesses is a significant factor and "perhaps the critical factor for a court considering a motion to change venue." *Holder Co.*, 1987 LEXIS 10345, at  *24.  "The Court must consider the effect of transfer on the availability of certain witnesses and their live testimony at trial."  *Id*. at *23.  Additionally, parties should "specify the key witnesses it planned to call and outline the scope of their testimony."  *Id.*

In *Holder Co.*, the court held that convenience of the parties and witnesses favored Plaintiff's choice of forum because:

> [P]laintiffs submitted the affidavits of witnesses who could testify to the alleged trademark and copyright infringement.  In these affidavits, the witnesses testified to the inconvenience of testifying in New York.  These witnesses reside in Arizona and would be beyond the Eastern District of New York's subpoena power under *Fed. R. Civ. P. 45(e)*.  In contrast, [the defendant] submitted only the affidavit of its president regarding the inconvenience of appearing in Arizona.  It failed to specify the key witnesses it planned to call and outline the scope of their testimony.

---

generalized allegations that there are many important documents in his preferred forum; he must, at least, explain what these documents are and why they are necessary to the determination of the issues in this case").

- 7 -

*Id.* at *24-25.

Neither party has provided an affidavit of witnesses who could "testif[y] to the inconvenience of testifying" in either venue, but based on the evidence the Court does have before it, it is clear that the inconvenience would be shared equally by both parties.

In reaching this conclusion, the Court took into consideration the health of Johnson's daughter.  While the Court recognizes the difficulty of Johnson leaving his daughter to testify should this case go to trial, this fact alone is insufficient to tip the balance of inconvenience in Defendants' favor.

> **6.** **The Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses**

Whenever possible, a court should facilitate the "live" presence of material nonparty witnesses.  *Kendall U.S.A., Inc. v. Dayton Steele Rule & Die Co.*, 666 F. Supp. 1264, 1264 (N.D. Ind. 1987).  A defendant must show that transferring venue would "appreciably expand the pool of potential witnesses."  *Ashmore v. Northeastern Petroleum Div. of Cargill, Inc.*, 925 F. Supp. 36, 39 (D. Me. 1996).  In addition, "[a] defendant's motion to transfer under section 1404(a) may be denied when the witnesses are employees of the defendant and their presence can be obtained by the party."  *Id*. at 38.  Finally, an Arizona nonparty witnesses could not be compelled to testify if this case were transferred to the Northern District of Illinois.  Fed. R. Civ. P. 45(e) (providing that a nonparty cannot be compelled to attend trial unless served within the district or 100 miles of the place of trial).

Here, Defendants have presented evidence that their key nonparty witnesses could not be compelled to testify in Arizona.  However, Defendants have failed to demonstrate that the transfer of the case from the District of Arizona to the Northern District of Illinois would significantly expand their witness pool or increase their access to evidence.[4]  While Plaintiff's witness pool would not be seriously affected by a change in venue, an important witness for Plaintiff could not be compelled to testify in the Northern District of Illinois.  Therefore, the Court finds that this factor favors retaining venue in Arizona.

### 7.    State's Interest

"[T]he relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing."  *GNC Franchising*, 211 F.3d at 495.  Because Arizona has a public policy to provide a protective forum for its residents, this factor favors Arizona as the proper forum.  *See Brink v. First Credit Res.*, 57 F. Supp. 2d 848, 861 (D. Ariz. 1999) (holding that "[t]he state of Arizona maintains a strong interest in providing an effective means of redress for its residents").

## III.    CONCLUSION

After balancing the relevant factors, the Court finds that Defendants have failed to demonstrate that this case would be better litigated in the Northern District of Illinois than in the District of Arizona.  Even though the contract in dispute was negotiated and executed

---

[4] Defendants have identified three nonparty witnesses; one of which resides outside the 100 mile radius of Illinois jurisdiction.  Fed. R. Civ. P. 45(e).

in Illinois, and even though Illinois law may govern this action, these considerations are outweighed by the deference the Court must pay to Plaintiff's choice of forum, the strong connections shared by Plaintiff and Defendants to Arizona, the fact that many of the events giving rise to the Complaint occurred in Arizona, and the fact that Arizona has an interest in providing a judicial forum for its citizens.  Also tipping the scales against a transfer of venue is Defendants' failure to show that such a transfer would lower the costs of litigation, reduce the inconvenience of witnesses, or improve access to sources of proof.  As such, the Motion to Transfer Venue is denied.

      **IT IS ORDERED** denying Defendants' Motion to Transfer Venue to the United States District Court, Northern District of Illinois (Doc. 17).

      DATED this 17th day of October, 2005.

_____
Susan R. Bolton
United States District Judge

- 10 -